UNITED STATES DISTRICT COURT
DISTRICT OF NEW JERSEY

| | |
|---|---|
| LEONARD PARNESS TRUCKING CORP., | |
| Plaintiff, | Civ. No. 13-4148 (JLL) |
| v. | |
| OMNIPOINT COMMUNICATIONS, INC., a subsidiary of T-MOBILE USA, INC., | REPORT AND RECOMMENDATION |
| Defendant. | |

This matter is presently before the Court on the motion of Plaintiff, Leonard Parness Trucking Corp., to remand the action to the Superior Court of New Jersey, Hudson County. ECF No. 8. Plaintiff contends that this Court lacks subject matter jurisdiction pursuant to 28 U.S.C. § 1332 because the amount in controversy is less than $75,000. Defendant opposed the motion. ECF No. 9. The Court considered this motion without oral argument pursuant to Federal Rule of Civil Procedure 78. For the reasons set forth herein, the Undersigned respectfully recommends that the District Court grant Plaintiff's motion and remand this matter to the Superior Court of New Jersey.

**RELEVANT FACTS & PROCEDURAL HISTORY**

On or about December 30, 1997, Plaintiff, Leonard Parness Trucking Corp. ("Parness"), entered into a lease agreement with Omipoint Communications, Inc.,[1] for commercial space in

---

[1] T-Mobile Northeast LLC is Successor to Omnipoint Communications, Inc. pursuant to a merger in 2005. Certification of Sabrina Bordin-Lambert ("Bordin-Lambert Cert."), ECF No. 9-2, ¶ 7. Defendant asserts that T-Mobile USA is not a proper party to the action because it was

1

Jersey City, NJ, for $1,000 per month. Lease, attached as Ex. A to Pl. Br. EFC No. 8-2. The lease provided for an initial term of ten years, and a right to renew the lease for three successive five-year periods premised on Omnipoint providing written notice of its intent to renew the lease at least thirty days before the then-current term ended. Id. at ¶ 3.

On November 27, 2012, Defendant, T-Mobile Northeast, successor to Omnipoint Communications, Inc., sent a notice of renewal of the lease to Steel Partners Holding, LP ("Steel Partners"),[2] whom Defendant believed was the successor-in-interest to Plaintiff. Def. Br. in Opp. Pl.'s Mot. Remand ("Def. Br."), ECF No. 9, at 4. On or about January 8, 2013, T-Mobile Northeast received an email that informed T-Mobile Northeast that Steel Partners had reorganized its entities in 2011 and the Lease should therefore be under SPH Group LLC. January 8, 2013 email, attached as Ex. N to the Certification of Sabrina Bordin-Lambert ("Bordin-Lambert Cert."), ECF No. 9-6.

According to Parness, Steel Partners did not have the authority to enter into a lease extension on behalf of Parness,[3] and therefore T-Mobile never effectively renewed the lease. Pl.'s Br. in Supp. Mot. Remand ("Pl. Br."), ECF No. 8, at 2. On May 1, 2013, Parness sent a letter to T-Mobile Northeast advising T-Mobile Northeast that it had failed to extend the lease

---

not a party to any lease with Plaintiff. Def. Br. in Opp. Pl.'s Mot. Remand ("Def. Br."), ECF No. 9, at 1 n.1.

[2] In June, 2009, Parness and Praxis Investment Advisors ("Praxis") entered into an agreement in which Praxis would act on behalf of Parness to collect rent from Omnipoint. Pursuant to a Notice of Assignment of Payments and Rights, Praxis sold its interest in the Lease to WebFinancial Corporation ("WebFinancial"), which later merged into Steel Partners. Def. Br., ECF 9, at 2-4.

[3] It appears that the Assignment of Rights between Praxis and Webfinancial may not have provided the respective assignee with any rights other than the right to receive payments pursuant to the lease. Notice of Assignment of Payments and Rights, attached as Ex. E to Bordin-Lambert Cert., ECF No. 9-5.

2

beyond January 22, 2013 because T-Mobile Northeast had not provided notice "to the owner" at least thirty days before the prior lease term expired. May 1, 2013 letter, attached as Ex. D to Pl. Br., ECF 8-2; May 1, 2013 letter, attached as Ex. O to Bordin-Lambert Cert., ECF No. 9. Parness further stated that T-Mobile Northeast had no right to continue to occupy the premises, and demanded holdover rent in the amount of $3,500 per month until T-Mobile Northeast removed all of its equipment. Pl. Br., ECF No. 8, at 2.

On May 31, 2013, Parness sent T-Mobile Northeast a letter permitting Defendant to remain on the premises for the month of June, providing a payment of $2,500 was made. May 31, 2013 letter, attached as Ex. E to Pl. Br., ECF No. 8-2. According to Parness, no payment was made. Pl. Br., ECF No. 8.2 at 2.

On June 10, 2012, Parness brought an action in the Superior Court of New Jersey, Hudson County, for eviction and failure to pay rent in the amount of $17,500. Complaint, attached as Ex. A to the Certification of Kimmo Hussain Abbasi ("Abbasi Cert."), ECF 8-1. On July 8, 2013, T-Mobile Northeast removed the case to this Court based on diversity of citizenship pursuant to 28 U.S.C. §1332(a). Notice of Removal, July 8, 2013, ECF No. 1.[4] On August 9, 2013, Parness filed this motion to remand the case to the Superior Court of New Jersey, Hudson County, claiming the amount in controversy requirement is not met. Pl. Br., ECF No 8-2, at 3.

---

[4] On July 10, 2013, this Court issued an Order to Show Cause directing Defendant to demonstrate that subject matter jurisdiction existed in this matter. Order, ECF No. 4. Defendant submitted a timely response to the Order to Show Cause. ECF No. 6. On July 22, 2013, the Court issued an Order withdrawing its Order to Show Cause without prejudice to the right of any party to challenge subject matter jurisdiction by motion. ECF No. 7.

**DISCUSSION**

The removal statute, 28 U.S.C. § 1441(a), provides that "any civil action brought in a State court of which the district courts of the United States have original jurisdiction, may be removed by the defendant[.]" Pursuant to 28 U.S.C. § 1332(a)(1), "the district courts shall have original jurisdiction of all civil actions where the matter in controversy exceeds the sum or value of $75,000, exclusive of interest and costs, and is between" citizens of different states. Diversity of the parties' citizenship is not at issue in this case. This issue here is limited to whether the amount in controversy under § 1332(a) exceeds $75,000.

Plaintiff argues that the Court should remand this case because it does not meet the amount in controversy requirement of § 1332(a). Plaintiff argues that the Court must measure the amount in controversy according to the monetary amount sought in its Complaint, which is in this case is $17,500. Pl. Br. at 5-7.[5] See also Summons & Certif. by Landlord, attached as Ex. A to Notice of Removal, ECF No. 1.

Defendant argues that the amount in controversy well exceeds $75,000 based on several factors. Central to Defendant's argument is the proposition that the Court, in determining the amount in controversy, should consider not merely the damages pled in the Complaint, but also should consider "a reasonable reading of the value of the rights being litigated." Def. Br., ECF No. 9, at 7 (quoting Angus v. Shiley, 989 F.2d 142, 146 (3d Cir. 1993)). Based on this premise, Defendant advances several reasons why the amount in controversy is satisfied. First, Defendant asserts that if it is evicted, it will incur costs exceeding $400,000 to remove the telecommunications equipment from the premises and install it at another location, including: (1)

---

[5] Plaintiff also argues that the Court should not consider any damages pled in a counterclaim to determine the amount in controversy. Pl. Br., ECF NO 8-2, at 6-7. However, Defendant has not filed a counterclaim in this matter. See generally Answer, ECF No. 5.

paying contractors and architects to remove equipment cabinets, cable trays and coaxial wiring installed at the property, (2) hiring a crane contractor to remove equipment from the rooftop of the building, and (3) securing work permits from Jersey City. Id. at ¶¶ 18-19. Second, Defendant argues that it has made improvements to the site that total $421,235. Bordin-Lambert Cert., ECF No. 9-2, at ¶ 17 & Ex. Q. Finally, Defendant argues that because Plaintiff seeks eviction as well as money damages, the Court may properly consider the value of the lease if Defendant is not evicted. For example, if Plaintiff loses on its eviction claim and Defendant is allowed to remain at the premises, the duration of that lease could extend approximately more than 100 additional months, and that "with future escalators the value of the matter is well above $100,000." Def. Br., ECF No. 9, at 9. In sum, Defendant asserts that the costs they will incur in removing and re-installing the equipment, the value of the capital improvements, and the value of the lease itself, each exceeds $75,000 and thereby satisfies the amount in controversy under § 1332(a).

Defendant invoked federal jurisdiction when it removed this action from state court. Therefore, it is Defendant's burden to establish that the amount in controversy is satisfied. Kaufman v. Allstate New Jersey Inc. Co., 561 F.3d 144, 152 (3d Cir. 2009). Section 1441 must be construed "strictly against removal." Samuel-Bassett v. Kia Motors America, Inc., 357 F.3d 392, 396 (3d Cir. 2004) (citing Boyer v. Snap-On Tools Corp., 913 F.2d 108, 111 (3d Cir. 1990)). Under Third Circuit law, a case should be remanded for want of the jurisdictional amount "[w]hen it appears to a legal certainty that the plaintiff was never entitled to recover the minimum amount set by Section 1332 . . . ." Meritcare Inc. v. St. Paul Mercury Ins. Co., 166 F.3d 214, 217 (3d Cir. 1999) (citing St. Paul Mercury Indem. Co. v. Red Cab Co., 303 U.S. 283, 289 (1938)); see also Samuel-Bassett, 357 F.3d at 398; Packard v. Provident Nat'l Bank, 994

5

F.2d 1039, 1045-46 (3d Cir. 1993); Bloom v. Barry, 755 F.2d 356, 358 (3d Cir. 1985); Nelson v. Keefer, 451 F.2d 289, 291 (3d Cir. 1971).[6]

The first issue here is whether the Court's determination of the amount in controversy is limited to the money damages sought in the Complaint, as Plaintiff alleges, or whether the Court may consider the cost and value factors urged by Defendant. This issue is easily dispatched. It is true that "[t]he general federal rule is to decide the amount in controversy from the complaint itself." Angus v. Shiley, 989 F.2d 142, 145 (3d Cir. 1993) (citing Horton v. Liberty Mutual Ins. Co., 367 U.S. 348, 353 (1961)). However, the Supreme Court and Third Circuit also have instructed that the amount in controversy should be measured by "a reasonable reading of the value of the rights being litigated." Id. at 146 (citations omitted).[7] Additionally, the Supreme

---

[6] However, the Third Circuit has instructed that district courts should continue to apply the preponderance-of-the-evidence standard to resolve factual issues relevant to jurisdiction. See Samual-Bassett, 357 F.3d at 392, 397 (stating that when resolving factual disputes, "the McNutt preponderance of the evidence standard would be appropriate. Once findings of fact have been made, the court may determine whether Red Cab's 'legal certainty' test for jurisdiction has been met.") (citing McNutt v. Gen. Motors Acceptance Corp. of Ind., 298 U.S. 178 (1936); Red Cab Co., 303 U.S. 283).

[7] More precisely, the Third Circuit instructs courts to measure the amount in controversy according to "a reasonable reading of the value of the rights being litigated" from the perspective of the plaintiff. For example, in Angus, the Third Circuit concluded that the district court properly found that the complaint did not limit its request for damages to a precise dollar amount, and that a jury certainly could have awarded plaintiff more than the jurisdictional threshold. Angus, 989 F.2d at 146. See also Columbia Gas Transmission Corp. v. Tarbuck, 62 F.3d 538, 539 (3d Cir. 1995) (in action seeking injunctive relief, amount in controversy is determined "by the value of the rights which the plaintiff seeks to protect"); John B. Kelly Inc. v. Lehigh Nav. Coal Co., 151 F.2d 743, 747 (3d Cir. 1945) (holding that amount in controversy is calculated by value of the property to plaintiff); Danner v. Tower Acquisition LLC, Civ. No. 1-cv-06-2270, 2007 WL 914172, *3-4 (M.D. Pa. Mar. 23, 2007) (holding that "the amount in controversy is calculated not by the value of the leasehold to defendant but by the value of the property to the plaintiff"). This distinction is significant, because some other circuits favor a broader examination of the amount in controversy that considers the value of the object of the litigation to either party, not only the plaintiff. See, e.g., BEM I, LLC v. Anthropologie, Inc., 301 F.3d 548, 553 (7th Cir. 2002) ("The question of how much damages BEM was seeking is anyway a red herring, since the jurisdictional minimum in diversity cases is not the amount sought by the plaintiff but the amount at stake to either party to the suit."); City of Moore v.

6

Court has held "[i]n an action seeking declaratory or injunctive relief, it is well established that the amount in controversy is measured by the value of the object of the litigation." Hunt v. Wash. State Apple Advert. Comm'n, 432 U.S. 333, 347 (1977).

Courts within the Third Circuit that have considered whether there is diversity jurisdiction in eviction actions have examined the value of the lease agreement to the plaintiff, rather than merely using the money damages sought in the complaint as the benchmark. In Byler Management Co., LLC v. Bulletproof Enters., Inc., , the district court reasoned that "[s]ince Plaintiff is not only seeking a certain amount of unpaid rent but to eject Defendant as well, we have to determine the value to Plaintiff of the ejectment action." Civ. No. 1:cv-10-0632, 2010 WL 2431823 at *4 (M.D. Pa. June 14, 2010). Therefore, the court in that case considered several factors, including the unpaid rent, and whether the value of the property with improvements made by defendant exceeded the jurisdictional threshold. Id. The court concluded that the rent was well below the jurisdictional threshold, and that defendant had made no showing of a specific value to the property with defendant's improvements. Id.[8]

In this case, Defendant correctly asserts that the Court is not limited to the monetary damages sought by Plaintiff. Instead, the Court should consider the value of the property or right that plaintiff seeks to protect in this litigation. Columbia Gas Transmission Corp., 62 F.3d at 539. But applying that analysis to this case makes clear that the Court cannot consider the costs

---

Atchison, Topeka Santa Fe Ry., 699 F.2d 507 (10th Cir. 1983) (loss to defendant is proper consideration in measuring jurisdictional threshold).

[8] The court also rejected defendant's argument that the $235,000 defendant had spent on improving the property satisfied the jurisdictional amount because those expenditures represented a loss defendant would suffer if evicted. Byler Management Co., LLC, 2010 WL 2431823, at *5. Observing that the Third Circuit requires courts to measure the value of the litigation from the perspective of the plaintiff, the court concluded that "jurisdiction is not assessed by losses the defendant may incur." Id.

that Defendant is likely to incur in removing the equipment and reinstalling it at a different location.[9] As noted above, the Third Circuit has consistently instructed that the defendant's costs are not a proper consideration in determining the amount in controversy. See supra note 7. Indeed, in Columbia Gas Transmission Corp., plaintiff Columbia Gas sought injunctive relief requiring defendant to remove excess dirt and rock that was impeding plaintiff's use of the subject easements to operate an oil pipeline, and to prohibit plaintiff from placing further dirt on the easements. Columbia Gas Transmission Corp., 62 F.3d at 539-40. Rejecting defendant's argument that the amount in controversy was below the jurisdictional threshold, the district court found that without the injunction, it would cost the plaintiff anywhere from $100,000 to $1,000,000 to modify or move the pipeline so that plaintiff could continue to operate it. Id. at 540. Affirming the district court, the Third Circuit held that "[t]he amount in controversy is measured by reference to the value of the rights which Columbia possesses by virtue of the rights of way." Id. at 541.

Therefore, Third Circuit caselaw makes clear that the value of the litigation to the defendant, or the costs that a defendant faces if plaintiff prevails, are not proper considerations for this Court in determining the amount in controversy. Moreover, those costs would not be a proper consideration because defendants presumably will have to bear them regardless of when they have to vacate, and defendants have made no showing to the contrary.

The Court next considers Defendant's argument that the improvements T-Mobile Northeast made to the property satisfy the jurisdictional threshold. T-Mobile Northeast alleges that it has expended $421,235 "to construct and maintain the site." Bordin-Lambert Cert., ECF

---

[9] Therefore, the Court need not resolve whether Defendant has established by a preponderance of the evidence that the equipment removal and reinstallation fees would exceed $400,000, or whether, as plaintiff claims, that cost would not exceed $25,000. See Pl. Br., ECF No. 8-2, at 8; Pareness Cert., attached as Ex. G to Pl. Br., ECF No. 8-2, ¶¶ 3-5.

8

No. 9-2, at ¶ 17.  T-Mobile Northeast has provided a spreadsheet that purports to explain those expenses.  Eng. Project Detail, attached as Ex. Q to Bordin-Lambert Cert., ECF No. 9-7.  It appears that many of those expenses relate in some fashion to the acquisition and installation of certain equipment, including antennas and antenna control cables by T-Mobile Northeast.

It may be that certain improvements by a tenant to the property benefit the owner sufficiently to satisfy the amount in controversy in an eviction action, since the owner might be the beneficiary of those improvements after evicting the tenant.  See Byler, 2010 WL 2431823, at *4 ("Since Plaintiff is not only seeking a certain amount of unpaid rent but to eject Defendant as well, we have to determine the value to Plaintiff of the ejectment action.  Thus, we must consider the increase in value to the property from the improvements Defendants has made and the value of leasing the property with the improvements.").

The Defendant's argument fails, however, because its proofs fall well short of the preponderance-of-the-evidence standard.  The spreadsheet presumes a significant degree of familiarity with the equipment and abbreviations for equipment contained therein. Absent significant elaboration by defendants about the purpose of the equipment and installation procedures encompassed in the spreadsheet , it is difficult, if not impossible, for the Court to discern exactly what those expenses were, the purpose that the equipment served, and whether T-Mobile Northeast would remove some or all of that equipment if evicted.  In sum, Defendant has not demonstrated that those costs somehow added value to the property from the perspective of the plaintiff, much less that the value of those improvements to plaintiff exceeds $75,000.  As a result, even if the Court could conclude that those improvements would remain with the property upon eviction of Defendant, the Court still cannot determine the value of re-leasing the property with any such improvements.

In Byler, the district court rejected plaintiff's argument that the amount of unpaid rent determined the amount in controversy, but allowed that an increase in property valuation due to defendant's capital improvements could meet the jurisdictional threshold. Byler, 2010 WL 2431823, at *4. However, there, as here, defendant did not demonstrate what that value was, much less its value to the interests plaintiff sought to advance in the litigation. Accordingly, the court rejected defendant's assertion that those improvements satisfied the jurisdictional threshold. Id; See also Danner, 2007 WL 914172, at *3-4. Defendant's failure in this case to demonstrate with any specificity that value of the improvements they made to the property, and the benefit that has been conferred to plaintiff, compels the Court to conclude those improvements do not satisfy the amount in controversy.

Whether the value of the rent payments over the course of the lease agreement meets the jurisdictional threshold is a more complex consideration. Caselaw within the Third Circuit instructs that when a party denies the existence of any contract, that party places the entire value of that contract at issue. For example, in Dardovitch v. Haltzman, 190 F.3d 125 (3d Cir. 1999), the Third Circuit affirmed the district court's conclusion that the plaintiff had satisfied the jurisdictional threshold because although plaintiff was owed only $34,000 when he filed the complaint, the litigation would determine whether plaintiff was a beneficiary of the subject trust, and therefore would determine his entire interest in the trust, which was $104,000. The Third Circuit distinguished plaintiff's interest from that of a party seeking payment of certain obligations due under an ongoing contract, such as an installment contract, for which the amount in controversy would be limited to the amount due and owing when the complaint was filed. Id. at 135. The Third Circuit instructed:

> Where, by contrast, a suit is brought to establish directly the right to receive any payments because the putative defendant has repudiated that right entirely, and not just

with respect to current payments, the amount in controversy is the entire amount that may ever come due. . . . Accordingly, a suit to establish one's status as a beneficiary puts the entire amount of one's alleged interest in the trust in controversy.

Id. at 135-36.

Similarly, in Con-Way Transp. Serv. v. RegScan, Inc., No. 4:03-cv-0374, 2005 WL 1210950 (M.D.Pa. Apr. 22, 2005), the district court concluded that the defendant, by arguing that it did not owe royalty payments to plaintiff pursuant to a software licensing agreement because that licensing agreement was invalid, had placed the entire value of the contract at issue. Id. at *3. Because the total value of the agreement exceeded $75,000, the district court found that the jurisdictional threshold was satisfied. Id; See also Nationstar Mortg. LLC v. Knox, 351 F. App'x. 844 (5th Cir. 2009) ("when the validity of a contract or right to property is called into question in its entirety, the value of the property controls the amount in controversy").

In this case, Plaintiff's assertion that the lease terminated and that there was no lease extension may place at issue the existence, and thus the entire value, of the contract for January 2013 to January 2018. Plaintiff asserts that Defendant did not extend the lease because Defendant failed to provide adequate notice to Plaintiff. In a letter to T-Mobile USA dated May 1, 2013, Plaintiff asserted that T-Mobile USA had "failed to extend the term of the lease by serving notice to the owner thirty (30) days prior to expiration of the lease term." May 1, 2013, Letter, attached as Ex. D to Pl. Br., ECF No. 8-2 (hereinafter, "May 1, 2013, Letter"). Plaintiff takes that position notwithstanding the fact that, on November 27, 2012, T-Mobile Northeast notified Steel Partners Holdings LP that T-Mobile Northeast was "exercising its right to extend the Agreement for an additional Five (5) year term." Nov. 27, 2012 letter, attached as Ex. C to Pl. Br., ECF No. 8-2 (hereinafter, "Nov. 27, 2012, Letter"). If that lease term continued, the renewal terms would have begun on January 23, 2013, and ran through January 22, 2018, with T-Mobile Northeast possessing a right to extend the lease for another five years. Id. Even at

$1,000 per month in rent, and not including future escalators, the total amount of rent payments over the course of the extended lease term could well exceed the jurisdictional minimum. However, Plaintiff asserts that Steel Partners Holdings had no authority to enter into a lease extension on Plaintiff's behalf, and therefore the lease extension was not valid. Pl. Br., ECF No. 8-2 at 2.

But even if the entire value of the lease agreement is at issue in this case, the appropriate measure is not the value of the lease payments, because that is not what Plaintiff seeks in its Complaint. To the contrary, if Plaintiff prevails, it recovers no lease payments from Defendant. Unlike the plaintiffs in Dardovitch and Con-Way, who sought to enforce an agreement in order to collect money that would exceed the jurisdictional threshold, the Plaintiff here has disavowed the lease extension and instead seeks eviction and money damages that, by themselves, are well below the jurisdictional threshold. There is no indication whatsoever that the Plaintiff's interest in bringing the eviction action is to obtain money or property worth more than the jurisdictional minimum. There also has been no showing, or even suggestion, that Plaintiff intends to re-lease the property. In short, there has been no demonstration that if Plaintiff succeeds in evicting Defendant, it recovers anything more than the property it already owns.

Defendant relies heavily on the court's decision in MCC Mortgage LP v. Office Depot, Inc., 685 F. Supp. 2d 939 (D. Minn. 2010), to argue that it satisfies the amount in controversy requirement. The plaintiff in MCC Mortgage LP leased office space in a retail-office complex to defendant for an initial ten-year term, and gave defendant the option to renew the lease for a maximum of four five-year terms. The lease agreement included a rent-abatement provision that absolved defendant of its obligation to pay rent if less than 65% of the complex space was leased to retail establishments. Id. at 941. From mid-2003 until some time in 2009, retail occupancy

was below 65% and defendant invoked the rent-abatement provision, which meant it did not pay plaintiff at least $10,000 per month in rent. Id.

Plaintiff later claimed that defendant had breached another provision of the lease agreement and brought suit in state court to evict defendant. Id. Defendant removed the action to federal court, asserting that plaintiff sought to recover either the property or rent that exceeded $100,000 per year and exceeded $2,000,000 over the life of the lease. Id. at 941-42. Plaintiff moved to remand the action to state court. Plaintiff argued that because it sought solely eviction, and not damages, the $75,000 jurisdictional threshold was not satisfied. Id. at 942.

The district court rejected plaintiff's argument and instead examined the value of the rights plaintiff sought to enforce. Id. at 943-44. The court concluded that "the difference between MCC's current position, *vis-a-vis* the property and its position if it successfully evicts Office Depot is significant." Id. at 944. If plaintiff succeeded in evicting defendant and instead leased that property to a paying renter, it would have collected substantial rents. Id. Therefore, the district court concluded that the defendant had satisfied the jurisdictional threshold.[10]

The factual circumstances in MCC Mortgage LP are readily distinguishable from this case. The district court in MCC Mortgage LP was able to conclude with certainty that if plaintiff prevailed in the eviction action, it would seek to re-lease that propert. MCC Mortgage LP was the lessor for the commercial property at issue, which was retail space that inevitably would be leased. In fact, the district court noted that the correct measure was "the difference between the plaintiff's current economic position and its position if successful in the litigation-that is, if it

---

[10] The district court acknowledged plaintiff's assertion that, in that uncertain real-estate market, its ability to re-lease the property was unknown. MCC Mortgage LP, 685 F. Supp. 2d at 944. However, the court found that such contingencies did not compel a finding that the jurisdictional threshold was not met.

13

obtained possession of the premises and then re-leased it to another tenant." Id. at 943-944 (citing A. Levet Properties Partnership v. Bank One, N.A., Nos. Civ. A. 03-1708, 03-1373, 2003 WL 21715010, at *3 (E.D.La. July 21, 2003); Dickal 770 L.L.C. v. PRN Corp., No. 02-C-3206, 2002 WL 1285813, at *3 n.3 (N.D.Ill, June 10, 2002)). The district court noted that because defendant paid no rent when suit was filed, but would have paid at least $10,000 per month absent the rent-abatement provision, plaintiff stood to gain substantially more than the jurisdictional minimum from successfully evicting defendant. Id. at 944.

In this case, by contrast, there has been no showing as to what Plaintiff will do with the property, and therefore what, if anything it will gain if it successfully evicts Defendant. There has been no showing that Plaintiff intends to re-lease the property to a third party, or has made any efforts to do so, much less for a term and rate that would exceed $75,000. Indeed, Defendant has not advanced this argument at all. And although Plaintiff has demanded $2,500 to $3,500 per month from Defendant until Defendant removes their equipment, Letter, attached as Ex. D to Pl. Br., ECF No. 8-2, it would be far too speculative, indeed arbitrary, to apply that number as a measure of some future monthly lease amount that plaintiff would collect from another lessee. See Columbia Gas Transmission Corp., 62 F.3d at 543 (refusing to consider conjecture or speculation in determining the amount in controversy) (citing Kheel v. Port of New York Auth., 457 F.2d 46, 49 (2d Cir.) (""[T]he jurisdictional test is applicable to that amount that flows directly and with a fair degree of probability from the litigation, not from collateral or speculative sources."), cert. denied, 409 U.S. 983 (1972)). Such application falls well short of the preponderance-of-the-evidence standard, and would ignore the well settled principle that § 1441 is to be construed strictly against removal. Samuel-Bassett, 357 F.3d at 396.

Defendant removed the matter from the Superior Court of New Jersey, Hudson County to this Court and, therefore, bears the burden of establishing federal jurisdiction. For the reasons set forth above, the Undersigned concludes that Defendant have not met its burden to establish jurisdiction pursuant to 28 U.S.C. § 1332. Accordingly, the Undersigned respectfully submits that the District Court should grant Plaintiff's motion and remand this matter to the Superior Court of New Jersey, Hudson County.

## CONCLUSION

For the foregoing reasons, the Undersigned respectfully recommends that the District Court grant Plaintiff's motion and remand this case to the Superior Court of New Jersey, Hudson County. Pursuant to 28 U.S.C. § 636(b) and Local Civil Rule 72.1(c)(2), the parties have fourteen days to file and serve objections to this Report and Recommendation.

s/Michael A. Hammer
UNITED STATES MAGISTRATE JUDGE

Dated: September 27, 2013