## UNITED STATES DISTRICT COURT
## DISTRICT OF NEW JERSEY

| | |
|---|---|
| LEONARD PARNESS TRUCKING CORP., | Civil Action No.: 13-4148 (JLL) |
| Plaintiff, v. | **OPINION** |
| OMNIPOINT COMMUNICATIONS, INC., et al., | |
| Defendants. | |

This matter comes before the Court by way of Plaintiff's motion to remand the matter to state court pursuant to 28 U.S.C. § 1447.   This Court referred Plaintiff's motion to the Honorable Michael A. Hammer, United States Magistrate Judge, pursuant to 28 U.S.C. § 636 (b)(1)(B). Magistrate Judge Hammer filed a Report and Recommendation on September 27, 2013, recommending that Plaintiff's motion to remand be granted.   On October 11, 2013, Defendants T-Mobile Northeast LLC (successor to Defendant Omnipoint Communications, Inc.) and T-Mobile USA, Inc. (collectively, "T-Mobile") filed an Objection to Magistrate Judge Hammer's September 27, 2013 Report and Recommendation.   The Court decides this matter without oral argument pursuant to Rule 78 of the Federal Rules of Civil Procedure.   For the reasons set forth below, the Court adopts Magistrate Judge Hammer's Report and Recommendation, grants Plaintiff's motion to remand, and directs the Clerk of the Court to close the Court's file in this matter.

1.      **Background**

The following facts are undisputed.   On or about December 30, 1997, Plaintiff Leonard Parness Trucking Corp. entered into a lease agreement with Defendant Omnipoint Communications, Inc. for commercial space on the rooftop of a property located at 181 Pacific Street in Jersey City, New Jersey, for $1,000.00 per month.   The lease provided for an initial term of ten years and a right to renew the lease for three successive five-year periods premised on Omnipoint providing written notice of its intent to renew the lease at least thirty days before the relevant term ended.

On November 27, 2012, Defendant T-Mobile, successor to Omnipoint Communications, Inc., sent a notice of renewal of the lease to Steel Partners Holding, LP, whom Defendant believed was the successor-in-interest to Plaintiff.   According to Plaintiff, Steel Partners did not have the authority to enter into a lease extension on Plaintiff's behalf and thus, T-Mobile never effectively renewed the lease.

In light of the foregoing, on June 10, 2013, Plaintiff initiated a proceeding against T-Mobile in the Superior Court of New Jersey, Law Division, Landlord/Tenant Special Civil Part, Hudson County.   Plaintiff seeks to evict T-Mobile from the space it has been leasing and to recover unpaid rent in the amount of $17,500.

Pursuant to 28 U.S.C. § 1441(a), Plaintiff's Complaint was removed to this Court on July 8, 2013 by Defendant T-Mobile.   According to T-Mobile, this Court has original subject matter jurisdiction over this action by virtue of diversity of citizenship, 28 U.S.C. § 1332.   The parties do not dispute that diversity of citizenship exists.   In particular, there is no dispute that Plaintiff is a New Jersey corporation with its principal place of business in New Jersey and that Defendant

T-Mobile is a Delaware Limited Liability Company with its principal place of business in the State of Washington. The parties dispute, however, whether the amount in controversy requirement has been met.

In this regard, Plaintiff filed a motion to remand the matter on August 9, 2013. This Court referred Plaintiff's motion to Magistrate Judge Michael A. Hammer, U.S.M.J., pursuant to 28 U.S.C. § 636 (b)(1)(B). On September 27, 2013, Magistrate Judge Hammer entered his decision, recommending that Plaintiff's motion to remand be granted. Currently before the Court is Magistrate Judge Hammer's September 27, 2013 Report and Recommendation, as well as Defendant T-Mobile's objection thereto.

## 2. Legal Standards

When a magistrate judge addresses motions that are considered "dispositive," such as to grant or deny a motion to dismiss or to remand an action to state court, a magistrate judge will submit a Report and Recommendation to the district court. 28 U.S.C. § 636(b)(1)(A); Fed. R. Civ. P. 72; L. Civ. R. 72.1c(2). The district court may then "accept, reject or modify, in whole or in part, the findings or recommendations made by the magistrate. The judge may also receive further evidence or recommit the matter to the magistrate with instructions." 28 U.S.C. § 636(b)(1)(c); *see also* L. Civ. R. 72.1c(2). Unlike an Opinion and Order issued by a magistrate judge, a Report and Recommendation does not have the force of law unless and until the district court enters an order accepting or rejecting it. *See United Steelworkers of Am. v. N.J. Zinc Co., Inc.,* 828 F.2d 1001, 1005 (3d Cir. 1987).

When a litigant files an objection to a Report and Recommendation, the district court must

make a *de novo* determination of those portions to which the litigant objects.   28 U.S.C. § 636(b)(1) (c); Fed. R. Civ. P. 72(b); L. Civ. R. 72.1c(2).

Under 28 U.S.C §§ 1441 and 1446, a party may remove a civil action from state court to federal court if the district court has original jurisdiction over the action and the party removing the action does so within thirty days after receipt of the initial pleading.   Pursuant to 28 U.S.C. § 1332(a)(1), "the district courts shall have original jurisdiction of all civil actions where the matter in controversy exceeds the sum or value of $75,000, exclusive of interest and costs, and is between" citizens of different states.   Again, there is no dispute here that diversity of citizenship exists; the sole issue is whether the amount in controversy exceeds $75,000.   Because Defendant T-Mobile is the party seeking to invoke this Court's jurisdiction, it bears the burden of establishing that the amount in controversy is met.   *See Kaufman v. Allstate New Jersey Ins. Co*., 561 F.3d 144, 151 (3d Cir. 2009); *Frederico v. Home Depot*, 507 F.3d 188, 193 (3d Cir. 2007).

Removal statutes "are to be strictly construed against removal and all doubts should be resolved in favor of remand." *Steel Valley Auth. v. Union Switch and Signal Div*., 809 F.2d 1006, 1010 (3d Cir. 1987).

**3.     Discussion**

In concluding that Defendant T-Mobile had failed to meet its burden of establishing the amount in controversy requirement, Magistrate Judge Hammer held, in pertinent part:

- Third Circuit case law makes clear that the value of the litigation to the defendant, or the costs that a defendant faces if plaintiff prevails, are not proper considerations for this Court in determining the amount in controversy. Moreover, those costs would not be a proper consideration because defendants presumably will have to bear them regardless of when they have to vacate, and defendants have made no showing to the contrary. (R&R at 8).

- Defendant has not demonstrated that [the costs of improvements T-Mobile made to the property] somehow added value to the property from the perspective of the plaintiff, much less that the value of those improvements to plaintiff exceeds $75,000. As a result, even if the Court could conclude that those improvements would remain with the property upon eviction of Defendant, the Court still cannot determine the value of re-leasing the property with any such improvements. (R&R at 8-9).

- Plaintiffs assertion that the lease terminated and that there was no lease extension may place at issue the existence, and thus the entire value, of the contract for January 2013 to January 2018. . . .   But even if the entire value of the lease agreement is at issue in this case, the appropriate measure is not the value of the lease payments, because that is not what Plaintiff seeks in its Complaint. To the contrary, if Plaintiff prevails, it recovers no lease payments from Defendant. Unlike the plaintiffs in *Dardovitch* and *Con-Way*, who sought to enforce an agreement in order to collect money that would exceed the jurisdictional threshold, the Plaintiff here has disavowed the lease extension and instead seeks eviction and money damages that, by themselves, are well below the jurisdictional threshold. There is no indication whatsoever that the Plaintiffs interest in bringing the eviction action is to obtain money or property worth more than the jurisdictional minimum. There also has been no showing, or even suggestion, that Plaintiff intends to re-lease the property. In short, there has been no demonstration that if Plaintiff succeeds in evicting Defendant, it recovers anything more than the property it already owns. (R&R 11-12).

Defendant challenges Magistrate Judge Hammer's Report and Recommendation on two grounds, claiming that he erroneously found that: (1) the future rental payments under the parties' lease does not establish the jurisdictional threshold, and (2) T-Mobile's improvements to the subject premises fail to establish the jurisdictional threshold.

The Court begins its analysis by noting two key principles.   First, the plaintiff is the master of her own claim.   *See Morgan v. Gay,* 471 F.3d 469, 474 (3d Cir. 2006).   Second, "the general federal rule is to decide the amount in controversy from the complaint itself."   *See Angus v. Shiley Inc*., 989 F.2d 142, 145 (3d Cir. 1993).   Thus, "whether diversity jurisdiction exists is

determined by examining 'the facts as they exist when the complaint is filed.' " *Onyiuke v. Cheap Tickets, Inc*., 435 Fed. Appx. 137, 138-139 (3d Cir. 2011) (quoting *Newman–Green, Inc. v. Alfonzo–Larrain*, 490 U.S. 826, 830 (1989)); *Meritcare Inc. v. St. Paul Mercury Ins. Co.,* 166 F.3d 214, 217 (3d Cir. 1999) ("[T]he amount in controversy is measured as of the date of removal."). In determining whether the amount in controversy exceeds $75,000, the Court generally accepts the plaintiff's good faith allegations and considers "only whether plaintiff's claims, taken as true, allege facts sufficient to invoke the jurisdiction of the district court." *Suber v. Chrysler Corp.,* 104 F.3d 578, 581 (3d Cir. 1997); *Columbia Gas Transmission Corp. v. Tarbuck*, 62 F.3d 538, 541 (3d Cir. 1995); *see also St. Paul Mercury Indem. Co. v. Red Cab Co*., 303 U.S. 283, 288-289 (1938) ("The rule governing dismissal for want of jurisdiction in cases brought in the federal court is that, unless the law gives a different rule, the sum claimed by the plaintiff controls if the claim is apparently made in good faith."). "It necessarily follows that whether the claims are for less than the jurisdictional amount depends on what damages a plaintiff could conceivably recover under state law." *Onyiuke*, 435 Fed. Appx. at 139 (citing *Suber*, 104 F.3d at 584).

Where, as here, the "plaintiff expressly limits her claim below the jurisdictional amount as a precise statement in the complaint, applying the maxim that the plaintiff is the master of her own complaint, the proponent of the federal subject matter jurisdiction is held to a higher burden; that is, the proponent of jurisdiction must show, to a legal certainty, that the amount in controversy exceeds the statutory threshold." *Frederico v. Home Depot*, 507 F.3d 188, 196 (3d Cir. 2007).[1]

---

[1] In contrast, "*Samuel–Bassett* applies where the plaintiff has not specifically averred in the complaint that the amount in controversy is less than the jurisdictional minimum. There, the case must be remanded if it appears to a legal certainty that the plaintiff cannot recover the jurisdictional amount." *Frederico*, 507 F.3d at 197.

In this regard, the Seventh Circuit has explained:

> Application of the St. Paul Mercury "legal certainty" standard usually is straightforward when the plaintiff wants to be in federal court. Then the complaint will contain allegations that, if established at trial, would justify a judgment exceeding the jurisdictional minimum. When the plaintiff prefers to be in state court, however, the complaint may be silent or ambiguous on one or more of the ingredients needed to calculate the amount in controversy. A defendant's notice of removal then serves the same function as the complaint would in a suit filed in federal court. The complication is that a removing defendant can't make the plaintiff's claim for him; as master of the case, the plaintiff may limit his claims (either substantive or financial) to keep the amount in controversy below the threshold. Thus part of the removing party's burden is to show not only what the stakes of the litigation *could be*, but also what they *are* given the plaintiff's actual demands.

*Brill v. Countrywide Home Loans, Inc.,* 427 F.3d 446, 449 (7th Cir. 2005); *see also Morgan*, 471 F.3d at 474 (referring to the *Brill* decision as "providing persuasive guidance").

Before applying the legal certainty test, any factual disputes must be resolved. The evidentiary standard applicable to resolving factual disputes is preponderance of the evidence. *Frederico*, 507 F.3d at 196. Once the factual findings are made, the court may then apply the legal certainty test, which mandates remand if the proponent of jurisdiction cannot show, to a legal certainty, that the amount in controversy exceeds the statutory threshold. *Frederico*, 507 F.3d at 196. Because Defendant raises a number of factual questions in support of its position as to the amount in controversy—including but not limited to: whether improvements made to the premises by Defendant have conferred a monetary benefit on the Plaintiff, and whether Defendant's eviction will result in a monetary gain to the Plaintiff—Defendant must, preliminarily, justify such allegations by a preponderance of the evidence. *See id*. at 194 (noting that under the Supreme Court's *McNutt* standard, the party alleging jurisdiction must "justify his allegation by a

preponderance of evidence.") (citing *McNutt v. General Motors Acceptance Corp. Of Indiana*, 298 U.S. 178 (1936)).

Before turning to Defendant's objections, as a threshold matter, the Court must determine whether the amount in controversy is limited to the money damages sought in the Complaint ($17,500.00) or whether the Court may also consider the cost and/or value of the factors raised by Defendants in the instant objection (namely, future rental payments and/or the value of improvements made to the property by Defendant). Although the Third Circuit has indicated that "the amount in controversy is not measured by the low end of an open-ended claim, but rather by a reasonable reading of the value of the rights being litigated," the Third Circuit's holding in this regard was premised on a complaint that did not "limit its request for damages to a precise monetary amount." *Angus,* 989 F.2d at 146; *see also Columbia Gas,* 62 F.3d at 541 ("Where the plaintiff in a diversity action seeks injunctive or declaratory relief, the amount in controversy is often not readily determinable. Under those circumstances, the amount in controversy is determined by 'the value of the object of the litigation.' ").

By contrast, the operative Complaint in this matter expressly limits its request for damages to a precise monetary amount: $17,500.00 in unpaid rent. In other words, the Complaint before this Court is neither silent nor ambiguous as to sole ingredient needed to calculate the amount in controversy. Thus, as a preliminary matter, the Court is not convinced that the Third Circuit's decisions in *Angus* or *Columbia Gas* necessarily require the Court to consider anything beyond the money damages sought in the Complaint in determining the amount in controversy.

Having said that, the Court recognizes that Plaintiff seeks—in addition to the $17,500.00 in unpaid rent—to eject Defendant from the premises. Thus, although this case does not involve

a request for a declaratory judgment or injunctive relief, because Plaintiff asks the Court to evict Defendant from the premises, the Court will, in an abundance of caution, be guided by the Third Circuit's directive in *Columbia Gas* that where the amount in controversy is not readily determinable, the amount in controversy is determined by the value of the object of the litigation— i.e., the value of the rights which the plaintiff seeks to protect.   *Columbia Gas,* 62 F.3d at 539-541.   In its objection, Defendant argues that the value of the rights Plaintiff seeks to protect is represented by: (1) the amount of future payments due under the lease agreement, and/or (2) the value of certain improvements made to the premises by Defendant.

     As to the value of certain improvements made to the premises by the Defendant, Defendant argues that the improvements it made were needed in order to operate the Antenna Facility and that the value of the Antenna Facility can be established with precision by the rental payments. Having carefully considered the supplemental certification of Sabrina Bordin-Lambert, the Court agrees with Magistrate Judge Hammer's conclusion that Defendant has not demonstrated—by a preponderance of the evidence or to a legal certainty—that those costs of improvements added value to the property from Plaintiff's perspective because there is no indication that such improvements (including but not limited to the Antenna Facility) would remain with the property upon Defendant's eviction.   To the contrary, Ms. Bordin-Lambert's prior declaration indicates that, if evicted, Defendant T-Mobile would need to remove the heavy telecommunications equipment cabinets, cable trays, and coaxial wires that are currently operating on the premises, and would then need to relocate/re-install said equipment. (Docket Entry No. 9-2, ¶¶ 18-19). Even if Defendant *had* submitted evidence showing that the Antenna Facility (in whole or in part) would remain with the property upon Defendant's eviction, Defendant's assertion that the value

of the Antenna Facility can be "established with precision by the rental payments" is based on pure speculation. Thus, the Court agrees with Magistrate Judge Hammer's conclusion that Defendant's failure to demonstrate with any specificity the value of the improvements they made to the property *that will remain with the property* upon their eviction and/or the benefit that has been conferred to the Plaintiff by virtue of said improvements compels the Court to conclude that such improvements—to the extent they should be construed as comprising the "value" of the object of this litigation—do not satisfy the amount in controversy.

As to Defendant's argument that the amount in controversy should be measured by the amount of future payments due under the lease agreement, the Court begins by noting that there is no dispute that if Plaintiff succeeds in this action, at most, Plaintiff stands to gain $17,500.00 in unpaid rent. To be clear, Defendant has made no showing that Plaintiff could conceivably recover more than the $17,500.00 in unpaid rent that it seeks under state law if it succeeds in this action. *See Suber,* 104 F.3d at 584. As to the value that Plaintiff stands to gain from the eviction itself, the Court finds that there has been no showing as to what Plaintiff will do with the property, what—if anything—it will gain by evicting Defendant, and/or whether Plaintiff intends to re-lease the property to a third party, much less for a term or rate that would exceed $75,000. Moreover, the determination of whether diversity jurisdiction exists is determined by examining "the facts as they exist when the complaint is filed." *Onyiuke,* 435 Fed. Appx. at 138 (quotation omitted). Thus, Defendant's conclusory assertion that "Plaintiff indeed intends to lease the property post-eviction"—even if true—is only relevant to the extent such facts existed at the time Plaintiff's Complaint was filed in state court. Although Defendant points out that Plaintiff has apparently offered T-Mobile a new lease "on generous terms," Defendant sheds no light whatsoever on the

terms of this alleged offer, nor does Defendant specify as to when this offer was made. The Third Circuit has expressly cautioned that such speculative arguments should not be considered in determining the amount in controversy. *Columbia Gas,* 62 F.3d at 543.

Although the Court has considered the cases cited to by Defendant—which include several district court decisions from outside this district and an unpublished decision by the Court of Appeals for the Fifth Circuit—such cases are not binding on this Court and, in any event, do not convince the Court the "value of *T-Mobile's* leasehold" should be considered in determining the amount in controversy in this case. To the contrary, this Court agrees with Magistrate Judge Hammer's conclusion that, in this Circuit, the amount in controversy must be measured from the perspective of the Plaintiff. *See, e.g., Onyiuke,* 435 Fed. Appx. at 139 ("In determining whether the amount in controversy exceeds $75,000, the Court generally accepts the plaintiff's good faith allegations. . . . It necessarily follows that whether the claims are for less than the jurisdictional amount depends on what damages a plaintiff could conceivably recover under state law."); *Columbia Gas*, 62 F.3d at 539 ("[I]n diversity suits for injunctions the cost of compliance is not the definitive measure of the amount in controversy. Rather, we measure the amount in controversy by the value of the rights which the plaintiff seeks to protect."); *Angus*, 989 F.2d at 146 ("Given that the complaint does not limit its request for damages to a precise monetary amount, the district court properly made an independent appraisal of the value of the claim and reasonably found that the actual amount in controversy exceeded $50,000 for there can be no doubt that a reasonable jury likely could have valued [plaintiff's] losses at over $50,000."); *John B. Kelly, Inc. v. Lehigh Nav. Coal Co*., 151 F.2d 743, 747 (3d Cir. 1945). As aptly noted by Magistrate Judge Hammer, even if the Court were to construe the act of eviction as conferring some benefit on the Plaintiff,

Defendant has failed to demonstrate—by a preponderance of the evidence or to a legal certainty—that Plaintiff stands to gain anything more than the property it already owns by virtue of this eviction.   Defendant's mere speculation as to what Plaintiff may or may not do with its property post-eviction is simply insufficient to establish the amount in controversy requirement given the facts of this case.

As previously stated, the Third Circuit has expressly cautioned that removal statutes are to be strictly construed against removal, and that all doubts should be resolved in favor of remand. *Batoff v. State Farm Ins. Co*., 977 F.2d 848, 851 (3d Cir. 1992).   In light of the foregoing, the Court agrees with Magistrate Judge Hammer and concludes that Defendant has not met its burden of establishing that the amount in controversy requirement is met.   *See Frederico,* 507 F.3d at 193.

**4.     Conclusion**

Having thoroughly reviewed Magistrate Judge Hammer's September 27, 2013 Report and Recommendation, including Defendant T-Mobile's objection thereto, this Court hereby adopts said Report and Recommendation as the findings of fact and conclusions of law of this Court, as explained more fully herein, and thus grants Plaintiff's motion to remand this matter to the Superior Court of New Jersey, Hudson County.

An appropriate Order accompanies this Opinion.


|  | s/ Jose L. Linares |
|---|---|
| Date:    November 6, 2013 | Jose L. Linares |
|  | United States District Judge |